IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

ROGER D. BECKNER,

        Plaintiff,

v.                            Civil Action No. 2:05-cv-00530

BAYER CROPSCIENCE, LP,

        Defendant,

WEST VIRGINIA UNIVERSITY
FOUNDATION, INC.,

        Movant.

## MEMORANDUM OPINION AND ORDER

On May 24, 2006, Plaintiff Roger D. Beckner by counsel served a subpoena duces tecum upon West Virginia University Foundation, Inc. seeking production of certain donation records.  West Virginia University Foundation, Inc. ("the Foundation") filed a Motion for Protective Order and Motion to Quash Subpoena Duces Tecum, and Plaintiff filed a Response.  (Docket # 109, 118.) Thereafter, the Foundation filed a Reply.  (Docket # 148.)

### *Facts Alleged*

This is a deliberate intent case brought against Bayer Cropscience alleging that Plaintiff's peripheral neuropathy was caused by his exposure to chemicals while working at Bayer's

chemical plant in Institute, West Virginia.  During and following
Mr. Beckner's employment, the plant was operated variously by Union
Carbide, Rhone Poulenc, Aventis, and Bayer. (Docket # 118, p. 1.)

Mr. Beckner alleges that during his employment, at his annual
plant physical, he informed company physician Dr. Bipin Avashia
that he had been diagnosed with peripheral neuropathy, but that the
cause of his condition was unknown.  He further alleges that while
Dr. Avashia knew that peripheral neuropathy could be caused by
chemicals used at the plant, Dr. Avashia never informed him of the
possible connection between his condition and his job as a chemical
operator. (Docket # 118, p. 1-2.)  Mr. Beckner alleges that
contrary to industry standard, Dr. Avashia did not take any steps
to determine the degree of his exposure to those chemicals during
his work.  He contends that he reported worsening symptoms to Dr.
Avashia at his annual physical each year from 1994 to 1998, but Dr.
Avashia continuously failed to mention that plant chemicals could
cause his condition.

In 1999, Plaintiff left his job and went on disability.  Id.
According to Plaintiff, two experts on peripheral neuropathy now
link his illness to his exposure to plant chemicals.

Defendant Bayer CropScience recently disclosed Dr. Christopher
Martin of the West Virginia University School of Medicine as an
expert on the issue of causation and industry standards. (Docket
# 118, p. 3.)  Plaintiff describes Dr. Martin's report as

2

"extremely favorable" to Dr. Avashia.   After considering Dr. Martin's report, Plaintiff learned that Dr. Avashia and/or one or more of the companies operating the subject plant were donors to WVU through the Foundation.   However, because Dr. Martin's report was disclosed late in discovery, Plaintiff complains that he has had no opportunity to further explore the relationship between Dr. Avashia, the corporations, and Dr. Martin and/or WVU School of Medicine.   (Docket # 118, p. 3-4.)   Accordingly, Plaintiff sought information concerning such donations from the Foundation itself, serving a subpoena duces tecum which requested the following:

> Any and all records of contributions to the WVU Foundation from (i) Bayer AG; (ii) Bayer CropScience; (iii) Aventis CropScience; (iv) Rhone Poulenc; (v) Union Carbide; and/or (vi) Dr. Bipin Avashia, between January 1, 1995 and the present, showing the amount of the contribution, the date of the contribution and purpose for which the contribution is to be used.

(Docket # 109.)

### *Summary of Arguments*

The Foundation initially argued that this information was irrelevant to any substantive issues in the case, in part because Plaintiff had not shown that Dr. Martin was even aware of any contributions.   (Docket # 109, p. 2.)   By the time of the Foundation's Reply, however, Dr. Martin had been deposed and stated that he <u>was</u> aware that Dr. Avashia had made a gift to the Foundation.   (Docket # 148, p. 1.)   In its initial Motion, the

3

Foundation acknowledged that "[i]f the expert knows about a contribution, the Plaintiff can use such information to support an inference that the expert's testimony may have been colored by the contribution." (Docket # 109, p. 2.) However, the Foundation changed its tune in its Reply, stating there that "[t]he fact that Dr. Martin may have heard of an alleged donation by Dr. Avashia is meaningless to the Foundation." (Docket # 148, p. 2.) It appears thus that the Foundation does not abandon its relevancy argument, which will be analyzed below following this summary of both parties' positions.

The Foundation's second argument is that the scope of the request is unduly burdensome upon it as a non-party under Fed.R.Civ.P. 45(c)(3)(A)(iv). (Docket # 109, p. 2-3.) It contends that this request seeks information concerning six different organizations which represent thirty-one (31) different entities, plus Dr. Avashia, and spans eleven (11) years. Additionally, the Foundation argues that the subpoena seeks disclosure of privileged, confidential material under Fed.R.Civ.P. 45(c)(3)(A)(iii), in that the Foundation assures its donors of confidentiality of their gifts. (Docket # 109, p. 2-4.)

The Foundation further argues that any court-ordered disclosure would be devastating to its fund-raising efforts. (Docket # 109, p. 4.) Finally, it argues that disclosure would violate the privacy interests of individual donors themselves, and

4

the subpoena should be quashed under Fed.R.Civ.P. 45(c)(3)(B)(i). Id. at 5-8.

Plaintiff initially responded to the Foundation's concerns by agreeing to narrow the scope of the subpoena to those contributions directed to the School of Medicine, including Dr. Martin's department. (Docket # 118, p. 4.) This did not appease the Foundation, which argues that even with this modification, the request is overbroad in that it still pertains to the entire West Virginia University Health Sciences unit, rather than just the Department of Community Medicine, where Dr. Martin works. (Docket # 148, footnote 2.)

By way of substantive response, Plaintiff avers that the Foundation's promise of confidentiality to its donors does not create a legally recognized privilege; and that in any event, the Foundation often publicizes its donors by way of press releases and published reports, and may apprise departments at WVU of donor information. (Docket # 118, p. 5-6.) Plaintiff argues that if such a donor privilege existed, it has been waived by such disclosures; or that in the alternative, the privilege would not apply in a case where the information is relevant to ongoing litigation. Id. He argues that the Foundation has failed to provide any real evidence of the burden it alleges, and that contrary to the Foundation's contentions, impeachment evidence such as this is discoverable under the Federal Rules of Civil Procedure. Id. at 7-

10.

*Analysis*

Rule 45(a)(1)(C) of the Federal Rules of Civil Procedure provides in part that a subpoena may be issued directing a non-party "to produce and permit inspection and copying of designated books, documents or tangible things in the possession, custody or control of that person." Fed.R.Civ.P. 45(a)(1)(C)(2006). This provision should be read in conjunction with Federal Rules of Civil Procedure 26 and 34. Klesch & Co., Ltd. v. Liberty Media Corp., et al., 217 F.R.D. 517, 519 (D.Colo. 2003), citing McLean v. Prudential S.S. Co., 36 F.R.D. 421, 424 (E.D.Va. 1965); Fox v. House, 29 F.Supp. 673, 676 (E.D.Okl. 1939), Kendrick v. Heckler, 778 F.2d 253, 257 (5th Cir. 1985); Cusomano v. Microsoft Corp., 162 F.3d 708, 714 (1st Cir. 1998).

The court has reviewed the cases cited by the Foundation in its initial Motion, United States v. Fields, 663 F.2d 880, 880 (9th Cir. 1981) and Pernice v. Devora, 238 A.D.2d 558, 657 N.Y.S.2d 70 (1997). In Fields, defendants moved to quash a subpoena for pretrial production of witness statements and documents because the only potential use for such material would be for impeachment. The court found that production of the materials was not justified if such evidence would only be used for impeachment, and quashed the subpoena. However, Fields was a criminal matter, and did not involve application of the Federal Rules of Civil Procedure which

must properly be considered here.

So too is the case of <u>Pernice v. Devora</u>, supra, unpersuasive. While that case is factually similar to the instant case, the opinion consists of one conclusory paragraph, and involved application of New York law, not the Federal Rules of Civil Procedure.

By contrast, the case of <u>Behler v. Hanlon</u>,199 F.R.D. 553, 555 (D.Md. 2001) cited by Plaintiff, is closely analogous to the instant case, and contains thorough and well-reasoned analysis under the Federal Rules of Civil Procedure.  In <u>Behler</u>, Plaintiff served a Rule 45 subpoena upon defendant's independent medical examiner, Robert D. Keehn, M.D., seeking production of the doctor's tax returns and documents relating to his income earned during the last five years from defense attorneys and insurance companies, in connection with performing IMEs and testifying as an expert witness in deposition and trial.  <u>Id.</u> at 555. Plaintiff intended to impeach Dr. Keehn by showing bias or prejudice for the defendant.  Dr. Keehn filed an objection which the court construed as a motion for protective order.  <u>Id.</u>

The court found that resolution hinged upon the interplay between the law of evidence relating to the impeachment of witnesses, and the scope of discovery allowed by Fed.R.Civ.P. 26(b)(1) and (2).  <u>Id</u>. First, the court determined that the requested information was discoverable under Rule 26(b)(1), because

it related to the credibility of a witness whose testimony would be directed towards important issues in the case. A witness may always be impeached by evidence that she or he is biased, prejudiced, has a financial interest in the outcome of the case, or a motive to testify in a particular manner. <u>Id.</u> at 555-56,[1] <u>Thompson v. HUD</u>, 199 F.R.D. 168 (D.Md. 2001). This is true even though such impeachment is not directly covered by a specific rule of evidence. <u>Behler</u> at 556-7, <u>citing</u> <u>United States v. Abel</u>, 469 U.S. 45, 49-52, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984)(permitting bias impeachment despite no rule of evidence specifically allowing it); <u>Still v. K-Mart Corp.</u>, 865 F.2d 255, No. 87-2204, 1988 WL 131792 at *2(4th Cir. 1988)(unpublished opinion)(allowing extrinsic evidence of bias to impeach a witness who denied existence of facts showing bias during examination); <u>McKitis v. DeFazio</u>, 187 F.R.D. 225, 228 (D.Md. 1999)(citations omitted); Weinstein Treatise §

---

[1] The court quoted from the Commentary to Rule Changes, <u>Court Rules</u>, 192 F.R.D. 340, 389, pertaining to the revised Rule 26(b)(1) of the Federal Rules of Civil Procedure (which applies to this case as well), stating in part:

> [a] variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action....*information that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses, might be properly discoverable. In each instance, the determination of whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action.* <u>Behler</u> at footnote 3, emphasis added.

8

607.04[1]; 27 Charles Allen Wright & Victor James Gold, <u>Federal Practice and Procedure</u> § 6095 (1990); 1 Michael Graham, <u>Handbook of Federal Evidence</u>, § 607.7 4th Ed. 1996); Christopher B. Mueller & Laird C. Kirkpatrick, <u>Evidence</u>, § 6.33 (4th Ed. 1995); <u>1 McCormick on Evidence</u>, §39 (John W. Strong, ed., 5th ed. 1999).   The weight of the authority thus supports the logic of <u>Behler</u>.

The <u>Behler</u> court found further that bias/prejudice impeachment is not collateral, such that it may be proved both by examination of a witness as well as by introduction of extrinsic evidence, if the witness denies the bias or prejudice, or is evasive or equivocal about it during examination.   <u>Behler</u> at 557, <u>citing</u> Weinstein Treatise at §607.04[1], [4]; Wright and Gold Treatise at §6095; Graham Treatise at §607.7; Mueller and Kirkpatrick Treatise at §6.33; McCormick Treatise at §39.

The court likewise finds here that the potential for impeachment justifies production of the requested materials, which are relevant and discoverable under Rule 26(b)(1).   As the court remarked in <u>Behler</u>, "[t]he importance of credibility of witnesses to the trial of cases cannot be overstated, and *this is especially true with respect to expert witnesses*." <u>Behler</u> at 556[emphasis added]. Just as in <u>Behler</u>, the issue herein is the credibility of an expert witness whose testimony goes to the central issue of causation.   If Defendant or its related entities or Dr. Avashia made generous contributions annually for several years, and if Dr.

9

Martin and/or his department benefitted from those (or was made aware of those), a strong bias for Defendant might be inferred. Just as the amount a party pays in expert fees may tend to show bias in the expert, any additional monies or benefits the expert receives through a party may also show bias.  Cf. Behler at 557. That bias may well influence the jury's view of Dr. Martin's opinions.

Even if such information is discoverable, however, the court may restrict or prevent discovery if, following an evaluation of the Rule 26(b)(2) factors, it determines that the discovery would be burdensome, duplicative, unnecessarily costly, or insufficiently probative to the issues in the case to justify the expenses of production.  Behler at 561.  The Behler court ultimately found that production of all the information plaintiff requested would be overkill, and that the doctor's financial information could also be misunderstood at trial insofar as juries were unfamiliar with the usual compensation rates for expert witnesses.  Further, disclosure of the expert's total compensation, including items unrelated to litigation, would likely create confusion, distraction and prejudice among the jury, while providing little information relevant to a fair assessment of his credibility.  Id. at 562.

Next, the court found that the documents relating to all cases within a stated period of time for which Dr. Keehn was retained could be obtained by plaintiff through a more expedient, less

10

costly method: a deposition.  The court ordered Dr. Keehn to make a diligent search of all of his records in order to provide at deposition (1) the percentage of his gross income earned for each of the preceding five (5) years attributable to performing expert witness services on behalf of insurance companies, and/or attorneys defending personal injury cases; (2) a list of cases in which he had provided such services during the last five (5) years, in sufficient detail that plaintiff could locate or subpoena the court file; and (3) the name of each insurance company for which he had provided services as an expert witness in personal injury cases in the preceding ten (10) years.  Behler at 562.  The court stated that if, after taking this deposition, plaintiff could demonstrate that additional information was required in order to enable him to undertake reasonable bias impeachment of Dr. Keehn, or if Dr. Keehn did not perform a diligent record search or failed to give complete and unevasive answers at deposition, that additional discovery would be ordered.  Id. at 562-3.

Finally, to protect against potential abuse of Dr. Keehn's financial information, the court imposed a permanent protective order, forbidding the dissemination or copying of the information for any purpose not directly related to the prosecution of that case absent the doctor's consent or court order.  Id. at 563.

The Maryland court had taken this same approach in Thompson v. HUD, supra.  There, after finding the information sought was

11

relevant for impeachment, the court ordered the parties to confer in an attempt to narrow their dispute by application of the Rule 26(b)(2) balancing factors. It warned, however, that unparticularized claims of burden or expense would not suffice to prevent discovery; instead, the defendant must justify such claims with specific details that could be evaluated by the plaintiffs and/or the court. Thompson at 173. As in Behler, the Maryland court in Thompson suggested that the request be narrowed such that some, but not all, of the information would be produced, and that following this initial review, additional discovery could be ordered if warranted. Cost sharing or shifting were also to be considered. Id.

The court adopts this wise approach. Here, due to the timing of discovery, Plaintiff is unable to obtain this information by any means other than through its subpoena to the Foundation.[2] As in the cases above, however, the court finds that the information sought by plaintiff from the Foundation should be narrowed and produced under protective order.

The court finds that the Foundation has failed to demonstrate

---

[2] Discovery was originally set to terminate on April 28, 2006. (Docket # 27.) However, the parties jointly sought and the presiding District Judge granted an extension of discovery until June 2, 2006. (Docket # 40.) Thereafter, the parties agreed to extend discovery on particular items beyond that date, and the presiding District Judge permitted such discovery. (Docket # 96, 97.) Discovery as to the contributions of the corporations or Dr. Avashia to the Foundation was not among the topics in this latter extension. Accordingly, discovery as to that issue is now closed.

that the request is unduly burdensome.  While it argues that the request is overbroad in that it covers some 31 entities, the Foundation does not set forth any facts showing that the request could not be easily met by a computer search or perusal of readily available files.  As Plaintiff points out, it is hard to imagine that an organization such as the Foundation would not have a tracking system readily able to identify its donors and their giving histories.  The purported burdensomeness of the request is also lessened by Plaintiff's agreement to narrow its scope to only those contributions directed to the School of Medicine, including Dr. Martin's department.  While the Foundation complains that even this narrowed request is overbroad, again, it has not come forward with any specific facts to demonstrate this burden, and the court declines to narrow the scope of the request further.

The court has considered the Foundation's arguments that the information is privileged and must be protected.  However, while the Foundation may have promised all donors confidentiality, this does not create a legally-recognized privilege.  The court finds the case of <u>Cusomono v. Microsoft Corp.</u>, 162 F.3d 708 (1st Cir. 1998) distinguishable.  That case concerned discovery of the records of academicians who had recorded interviews, taken notes, and transcribed statements in the course of their research for a high-profile book concerning the "browser war" between Netscape and Microsoft.  The court found that these materials were not

13

discoverable, premising its opinion on the fact that materials compiled by journalists are protected so as to avoid destabilization of the First Amendment.  Id. at 714, citations omitted.  The court recognized that production would hamstring not only respondent's future research efforts but also those of similarly situated scholars, resulting in a loss of theoretical insight into the business world, and impeding the free flow of information to the public.  Id. at 717. No such risk is at issue here; while fundraising is important, it does not rise to First Amendment level.  Next, while financial information is sensitive, it cannot reasonably be argued that donors will cease contributions to the Foundation because this court ordered it to produce records specific to one matter in litigation.

Moreover, the request here is not as expansive as the Foundation suggests, nor is it likely to result in the extreme harm the Foundation suggests.  Plaintiff has requested information only as to Dr. Avashia and the corporations who are parties to this litigation, who are in a unique position to their retained expert, Dr. Martin.  Plaintiff does not seek information as to any other donors.  It is unimaginable that production of these relevant materials for limited use in this proceeding will result in a decrease in contributions to the Foundation.

Nor is the court convinced that the subject donor history constitutes "trade secret" under Fed.R.Civ.P. 45(c)(3)(B)(i).

14

While the court can appreciate the Foundation's private status and its worthy desire to keep donor information confidential, again, the request here boils down to a limited amount of history from parties to this litigation only.  It is unlikely that any of the Foundation's methods, techniques, and processes for soliciting donor contributions can be deduced from the records Plaintiff has subpoenaed; and even if they could, this court's protective order will alleviate that concern.

The Foundation argues that because it is not a party to this litigation, discovery of impeachment evidence from its files must be specially scrutinized.  (Docket # 148, p. 3.) The Foundation is correct insofar as the status of a person as a non-party is one factor that should be considered, and that this factor weighs against disclosure.  American Electric Power Co., Inc. v. United States, 191 F.R.D. 132 (S.D.Ohio 1999); citing Katz v. Batavia Marine & Sporting Supplies, 984 F.2d 422, 424 (Fed.Cir. 1993), Echostar Communications Corp. v. The News Corporation Ltd., 180 F.R.D. 391, 394 (D. Colo. 1998), and others.  However, even given such consideration, the Foundation has still failed to demonstrate undue burden or expense or a privilege that would immunize the material from discovery.  Finally, while the Foundation argues that Behler is distinguishable because it involved discovery from a party's expert rather than from an unrelated party such as itself, the court sees no appreciable distinction between the two.

15

Accordingly, it is **ORDERED** that the Foundation's Motion to Quash Subpoena is **GRANTED IN PART AND DENIED IN PART**, as follows: the Foundation shall produce or permit Plaintiff by counsel to inspect any and all records of contributions to the WVU Foundation directed to the School of Medicine, including Dr. Martin's department, from (i) Bayer AG; (ii) Bayer CropScience; (iii) Aventis CropScience; (iv) Rhone Poulenc; (v) Union Carbide; and/or (vi) Dr. Bipin Avashia, between January 1, 1995 and the present, showing the amount of the contribution, the date of the contribution, and the purpose for which the contribution was given. This information shall be produced within fourteen (14) days of the date of this Order.

This information is subject to protective order of this court, as follows: the information shall be kept confidential by all parties, counsel, experts and agents, and shall be used for the purpose of this litigation only.

The Clerk is instructed to transmit copies of this Memorandum Opinion and Order to counsel of record.

**ENTER** this 28th day of June, 2006.

Mary E. Stanley
United States Magistrate Judge