```
               IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

                            CHARLESTON


ROGER D. BECKNER,

            Plaintiff,


v.                                      Civil Action No. 2:05-cv-00530

BAYER CROPSCIENCE, L.P.

            Defendant.
```

## MEMORANDUM OPINION AND ORDER

In this deliberate intent action, Plaintiff claims that his peripheral neuropathy was caused by his exposure to certain chemicals while working at a chemical plant operated by Defendant and other operators of its Institute plant[1] during the years 1994-1999. (Docket # 1, Exhibit 2.) Plaintiff alleges that during his employment, Defendant failed to advise him of the dangers of the chemicals to which he was exposed or of the relationship between those chemicals and peripheral neuropathy, despite its knowledge that exposure to the chemical hexane (used in its plant) was a known cause of that condition. Id. Plaintiff alleges that he advised Defendant that he was diagnosed with peripheral neuropathy, but

---

[1] During and following Plaintiff's employment, the plant was operated by Union Carbide, Rhone Poulenc, Aventis, Bayer AG, and Bayer CropScience, LP. For ease in this Memorandum Opinion and Order, these will collectively be referred to as "Defendant."

that Defendant made no attempt to monitor his exposure or to remove him from that exposure. Id.

Plaintiff first served Defendant with notice of particular issues for 30(b)(6) deposition on April 28, 2006. (Docket # 70.) The notice was amended to add areas of inquiry (five (5) of which are in dispute here) on April 30, 2006. (Docket # 73.) The dates were later adjusted by a Second Amended Notice of Deposition dated May 3, 2006; however, the first topic remained the same as originally designated on April 28, and the latter five (5) topics at issue were designated identically in both the April 30 Notice and the May 3 Notice. (Docket ## 70, 73, 81.) The deposition of Defendant's designee, Mr. John Michael Wey, then took place on May 17, 2006. (Docket # 104, Exhibit B, p. 1.)

Plaintiff was not satisfied with Mr. Wey's responses to certain areas noticed for inquiry, and filed a Motion to Compel Responses to Rule 30(b)(6) Deposition Notice. (Docket # 104-1.) The motion requests that Defendant be made to produce a witness to testify or to respond more fully as to certain subjects, and also seeks an award of attorney's fees and costs. (Docket # 104-1, 104-2.) Defendant filed a Response, and Plaintiff thereafter filed a Reply. (Docket ## 149, 153.)

Plaintiff argues that Defendant, through Mr. Wey, refused in whole or in part to provide sufficient testimony concerning paragraphs ## 3, 9, 10, 11, 6, and 7 of the Second Amended Notice

2

of Deposition. (Docket # 104, p. 4-18.) The court will address each of these, together with Defendant's arguments as to each, in turn.

1. Paragraph # 3

Paragraph # 3 of the Second Amended Notice of Deposition sought : "[t]he exact dates that the Methomyl unit operated during each year that Roger Beckner was employed at the Institute plant." (Docket # 81, paragraph 3.) Defendant refused to provide this information. Mr. Wey stated in deposition that he did not have the exact dates on which the Methomyl unit operated. He stated that the company had provided Plaintiff with documents that would show approximate dates. He said he would have been able to state what the approximate dates of operation were, if he had reviewed those documents prior to deposition; however, because the Notice requested "exact dates", he showed up with no information. (Docket # 104-1, p. 5; Exhibit B, p. 40-42.)

In its Response, Defendant admits that the information is relevant, but forcefully argues that it has already produced thousands of documents and expert reports in answer to Plaintiff's interrogatories and document requests. (Docket # 149, p. 1-3, 6.) Defendant seemingly argues that it would be unduly burdened by further responding, and that Plaintiff should review the documents rather than depose its representatives. Id. at 6-8. Defendant also argues that it need not answer discovery that is duplicative of

3

other discovery or depositions. Id. It argues that by producing the most qualified person available, it has complied with Rule 30(b)(6), particularly since interrogatory responses, document productions, expert reports and depositions will provide Plaintiff with all he needs to challenge Defendant's case. Id. at 7-8. It argues that it is not obligated to produce an "omniscient witness" who would restate its entire proof scheme. Id. at 8.

Plaintiff points out, and Defendant does not dispute, that Defendant itself has had difficulty identifying which documents are responsive to Paragraph 3. (Docket # 104, p. 6.) Plaintiff wants to know Defendant's interpretation of the documents it produced, and what meaning Defendant intends to ascribe to these at trial. (Docket # 104, p. 6-7.) In other words, Plaintiff is attempting to discover Defendant's version of the facts, and Plaintiff is entitled to do so.

The cases cited by Plaintiff, United States v. Taylor, 166 F.R.D. 356, 360 (M.D.N.C. 1996) and International Assoc. of Machinists v. Werner-Matsuda, 390 F.Supp.2d 479, 487 (D.Md. 2005) support the discoverability of such matters. As the International Assoc. of Machinists court found, Rule 30(b)(6) requires the corporate designee to review all matters known or reasonably available to the corporation in preparation for the deposition. Id. at 487. The case of In re Vitamins Antitrust Litig., 216 F.R.D. 168, 172 (D.D.C. 2003), cited in International Assoc. of

4

Machinists, further supports that 30(b)(6) designees shall be *thoroughly educated* about the noticed deposition. In re Vitamins at 172. If a corporation has knowledge or a position as to a set of alleged facts or an area of inquiry, its officers, employees, or others must present the position, give reasons for the position, and stand subject to cross-examination.  Taylor, supra, at 362.  Otherwise, it is the attorney who is giving evidence, not the party. Id.

The cases Defendant cites are not helpful.  The case of In re: Applied Micro Circuits Corp. Securities Litig., 2003 U.S.Dist. LEXIS 9371 (S.D.Ca. 2003), concerned a notice of deposition which duplicated information that had already been produced in a prior deposition.  There has been no deposition testimony on point in the instant case; rather, Defendant contends that its document production suffices *in lieu of* deposition testimony.

Next, the case of Evans v. Allstate Ins. Co., 216 F.R.D. 516 (N.D.Okla. 2003) concerned the noticed Rule 30(b)(6) depositions of Allstate's top corporate officers, including its CEO, Senior Vice Presidents, and CFO.  The court found that these high level corporate executives were shielded from deposition unless they had unique personal knowledge about the controversy, and that the court should regulate discovery to avoid oppression, inconvenience, and burden to the corporation and its top executives.  Evans at 518-519.  Such are not the facts of this case.  The Evans court then

5

denied additional Rule 30(b)(6) depositions, which concerned areas it deemed irrelevant to the case, and which had been thoroughly discovered through other means. Id. at 519.

By contrast, here, the information sought has not been (indeed, could not be) discovered by other means. It is not enough for Defendant to simply dump literally thousands of pages of documents on Plaintiff, especially log books and related materials which may be unfamiliar to Plaintiff, and expect Plaintiff to guess Defendant's conclusions or any underlying factual qualifiers of those documents. The court agrees with Plaintiff that his rightful inquiry as to Defendant's interpretation of the documents and the facts surrounding them is not answered by paper production alone. Rather, Defendant is obligated to produce a witness who is familiar with the documents and suitably prepared[2] to answer questions concerning them.

Moreover, while Plaintiff's counsel sought to reconvene the deposition in order that Mr. Wey could review the documents and respond to his questions, defense counsel declined to agree to this. (Docket # 104, footnote 3, 4.) This was unreasonable. The court now **ORDERS** that the Defendant shall produce Mr. Wey or another witness qualified to respond to questions concerning the

---

[2] As a side matter, the court does not condone the flip approach of refusing to review documents in order to give the best known approximate dates simply because the Notice requested "exact" dates. This does not meet the requirements of Rule 30(b)(6), see cases supra.

dates, whether approximate or exact, that the Methomyl unit operated during each year that Plaintiff was employed at the Institute plant. Such witnesses shall be produced within fourteen (14) days of the date of this Order.

2.  Paragraphs 9-10

Paragraphs 9 and 10 of the Second Amended Notice requested information concerning the employment histories of other workers who worked on two of the same particular jobs in the Methomyl unit as Plaintiff. (Docket # 81, p. 3.) Plaintiff seeks to dispel Defendant's argument that his neuropathy could not have been caused by chemical exposure at work because no other similarly situated persons developed that condition. (Docket # 104, p. 7.) In deposition, Plaintiff's counsel explained to Mr. Wey that he wanted to find out where other workers trained on these jobs actually worked. Mr. Wey indicated that the only records that had been found were the log books previously produced. (Docket # 104, Exhibit B, p. 89-90.) Plaintiff's counsel then asked Mr. Wey what Defendant thought the log books meant, and whether Defendant had conducted any analysis of them. (Docket # 104, Exhibit B, p. 89-93.) This was met with objection by defense counsel, who argued that the documents were sufficient, and that Plaintiff was not entitled to know how defense counsel planned to try his case. Id. at 91.

In its Response, Defendant argues that it has produced the

names of thirty-five (35) individuals who were trained on these jobs, together with all the "Job Logs" which could be found for relevant years. (Docket # 149, p. 9.) According to Defendant, these logs document the dates that Plaintiff and co-workers worked in the Methomyl process, the jobs they performed and the days on which the Methomyl process was running. Id. Defendant argues that Plaintiff has the best evidence Defendant could find to show who worked on these jobs, and that nothing would prevent Plaintiff from contacting the thirty-five (35) witnesses to make further inquiry of them. Id. at 9-10.

Plaintiff needs to know, and is entitled to discover, what Defendant contends are the facts shown in its documents. It is not enough to produce the documents alone. Plaintiff is entitled to discover if Defendant has particular knowledge concerning those documents which may not appear on the face of the documents themselves, and to know the facts that Defendant will rely upon at trial. Plaintiff is not obligated to wait until trial to learn what the documents mean to Defendant.

The court **ORDERS** that Defendant shall provide additional testimony on this point from Mr. Wey or other designee. Any supplemental depositions shall be conducted within fourteen (14) days of the date of this Order.

3.  Paragraph 11

In Paragraph 11, Plaintiff sought to depose a corporate

designee regarding "[a]ny and all evidence that you intend to introduce at trial concerning leaks of n-hexane and/or MIBK in the Methomyl Unit and/or Larvin Unit, including any conclusions that you intend to present at trial concerning the amount of n-hexane and/or MIBK that leaked in the Methomyl Unit and/or Larvin Unit, on a daily, weekly, monthly and/or annual basis, during the time that Roger Beckner worked in such units." (Docket # 81, p. 3.) At deposition, Mr. Wey indicated that he had no knowledge in this area. (Docket # 149, Exhibit 2, p. 93-94.) Defense counsel indicated that he intended to introduce testimony at trial through an industrial hygiene expert, Mr. John Keeling, but was equivocal as to whether he would introduce evidence through other sources. Id. at 95-101.

Plaintiff's counsel aptly explained that Defendant had the benefit of the people who ran the plant, who may interpret documents in a certain way and know that the documents show particular facts. As counsel stated, Plaintiff has the right to discover Defendant's interpretation of the documents concerning leaks, as that would be clearly be relevant at trial.

Defendant's refusal to provide such information is unjustified. Plaintiff's counsel made clear at the deposition that he did not intend to discover <u>defense counsel's</u> trial strategy or counsel's interpretation of the material. Defense counsel's belaboring objections and refusal to commit to a position in spite

of this were simply obstinate. In its Response, Defendant again argues that it has satisfied the inquiry through its responses to production requests, and that its expert, Mr. Keeling, will offer his interpretation of the documents. Once again, however, Defendant overlooks Plaintiff's right to discover <u>Defendant</u>'s own knowledge about the documents as set forth above.

The court **ORDERS** that Defendant shall provide additional testimony on this point from Mr. Wey or other designee. Any supplemental depositions shall be conducted within fourteen (14) days of the date of this Order.

<u>4.</u>   <u>Paragraphs 6 & 7</u>

In the Second Amended Notice of Deposition, Plaintiff set forth the areas of inquiry as follows:

> 6. Any and all evidence or information which you contend supports a conclusion that Roger Beckner was not exposed to hexane and/or the other stipulated relevant chemicals in amounts sufficient to have caused his peripheral neuropathy.
>
> 7. Any and all non-medical evidence or information which you contend supports a conclusion that Roger Beckner was not exposed to hexane and/or the other stipulated relevant chemicals in amounts sufficient to have caused his peripheral neuropathy.

(Docket # 81.)

Plaintiff advises that Defendant has contended at various times throughout the case that Plaintiff's illness could not have been caused by his exposure to chemicals at the plant because he

10

was not exposed to them in sufficient amounts to have caused peripheral neuropathy. (Docket # 104, p. 9-10.) Indeed, Defendant argues in its Memorandum in Support of Motion for Summary Judgment that Plaintiff's neuropathy was caused by chronic low-dose chemical exposure that did not violate any occupational health standards. (Docket # 117, p. 28-29.) Defendant argues that paragraphs 6 and 7 seek medical information relative to causation which must be answered by expert testimony, not a Rule 30(b)(6) witness. (Docket # 149, p. 11-12.) Defendant has produced its causation experts for deposition already. Id.

Apparently, there was confusion between the parties as to whether the earlier deposition notice sought *non-medical* information in this regard. To clarify the inquiry, plaintiff's counsel revised the request into two paragraphs, 6 and 7, which appeared as above, and advised defense counsel that he was not seeking medical opinions, but rather factual evidence that Plaintiff was not exposed to chemicals in sufficient quantities to have caused his peripheral neuropathy. (Docket # 104, p. 11; docket # 153, p. 10.) Nonetheless, at deposition, counsel again became embroiled in debate, and there was no testimony on either point. (Docket # 104, Exhibit B, p. 79-88.)

The court agrees that expert testimony is properly discovered by expert deposition rather than Rule 30(b)(6) deposition. However, given Plaintiff's counsel's proviso that he is not seeking

medical testimony, but only factual information, the court finds these requests reasonable.  Plaintiff is entitled to discover such matters as the degree of the exposure, the engineering controls, any information from Defendant's non-medical employees concerning the exposure levels, and other related factual information within Defendant's own knowledge.  The court notes that Paragraph 7 was specifically limited to <u>non-medical</u> information, yet Defendant still refused to produce witnesses on this point.

The court **ORDERS** that Defendant shall produce an appropriate Rule 30(b)(6) designee to offer <u>non-medical</u> testimony as to Paragraphs 6 and 7 of the Second Amended Notice within fourteen (14) days of the date of this Order.

The Motion to Compel Responses to Rule 30(b)(6) Deposition Notice (docket # 104) is **GRANTED**, and Defendant shall answer the discovery as specifically instructed herein.

The court finds that the parties hereto are represented by skilled advocates who have both vigorously sought to protect their interests.  However, the court finds that Defendant's arguments, which are not supported by cited cases, have impeded, delayed and frustrated the fair examination of Defendant's Rule 30(b)(6) witness(es).  Accordingly, pursuant to Rule 30(d)(3), all further Rule 30(b)(6) depositions shall take place in Morgantown, West Virginia, at a place designated by counsel for Plaintiff.

The request for attorney's fees and costs (docket # 104-2) is **DENIED WITHOUT PREJUDICE**.

The Clerk is instructed to transmit copies of this Memorandum Opinion and Order to counsel of record.

**ENTER** this 28th day of June, 2006.

*Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge